UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALTAGRACIA POPA, AURELIA SANCHEZ
and TERESA OVALLES and on behalf of all                         Civil Case No. 12-CV-07957 (KBF)(SN)
other similarly situated,

                                      Plaintiffs,

          -against-

HOME HEALTH CARE SERVICES, INC.
and RUTH FORESTINE, PRESIDENT,

                                   Defendants.
-------------------------------------------------------------------X


# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS


MORITT HOCK & HAMROFF LLP
Attorneys for Defendants
400 Garden City Plaza
Garden City, New York  11530
Tel.:  (516) 873-2000
Fax:  (516) 873-2010

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

        A.    The Parties. ................................................................................. 2

        B.    Plaintiffs' Factual Allegations. .................................................... 3

        C.    Plaintiffs' Legal Allegations. ...................................................... 3

        D.    Procedural History. .................................................................... 5

ARGUMENT ................................................................................................... 6

POINT I        STANDARDS OF REVIEW ON MOTION TO DISMISS .................................. 7

POINT II       DEFENDANTS ARE EXEMPT FROM THE MINIMUM WAGE
               OVERTIME REQUIREMENTS OF THE NEW YORK LABOR LAW .............. 8

POINT III      PLAINTIFFS' REMAINING ALLEGATIONS OF WAGE VIOLATIONS
               FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ... 11

        A.    Plaintiffs' Remaining Allegations of Wage Violations Are
             Pre-empted. ................................................................................. 12

        B.    Plaintiffs' Remaining Allegations of Wage Violations Fail to State
             a Claim. ..................................................................................... 13

POINT IV      PLAINTIFFS' BREACH OF CONTRACT, UNJUST  ENRICHMENT
               AND QUANTUM MERUIT CLAIMS  ARE PRE-EXEMPTED, AND
               FAIL TO STATE A CLAIM .................................................................. 16

POINT V       THE COMPLAINT FAILS TO STATE A CLAIM FOR INDIVIDUAL
               LIABILITY AGAINST DEFENDANT FORESTINE ................................. 18

CONCLUSION ............................................................................................... 20

i

## **TABLE OF AUTHORITIES**

**Cases** **Page**

Almeida v. Aguinaga, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007)................................15

Angiulo v. County of Westchester, 11-CV-7823, 2012 U.S. Dist. LEXIS 153656
  (S.D.N.Y. Oct. 25, 2012), at **6-13......................................................................11

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ........................................................7, 10

Ballard v. Community Home Care Referral Serv., 264 A.D.2d 747, 747 (2d Dep't 1999)............8

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ...................................................7

Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993) .....................................7

Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984) ........................18

Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) ...............................7

Chan v. Triple 8 Palace, Inc., No. 03-cv-6048, 2006 U.S. Dist. LEXIS 15780,
  at *78, n. 39 (S.D.N.Y. Mar. 30, 2006) ...........................................................14, 15

Cunningham v. Electronic Data Systems Corp., 579 F. Supp. 2d 538, 543 (S.D.N.Y. 2008) ......15

Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005) .....................................15

Espinosa v. Delgado Travel Agency, Inc., No. 05-cv-6917, 2007 U.S. Dist.
  LEXIS 15149, at *1-2 (S.D.N.Y. Mar 2, 2007) ....................................................15

Fiore v. Medina, No. 11 Civ. 2264, 2012 U.S. Dist. LEXIS 143333, at *3, n.2
  (S.D.N.Y. Sept. 27, 2012)..................................................................................8

Flores v. Anjost Corp., No. 11 Civ. 1531 U.S. LEXIS 85171 (S.D.N.Y. June 19, 2012) ...........14

In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)................................7

Karmilowicz v. The Hartford Financial Servs. Group, Inc., No. 11-3284,
  2012 U.S. App. LEXIS 18394, at *5 (2d Cir. August 30, 2012)..................................7

Levy v. Verizon Information Services, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) ........12, 13, 16

Livadas v. Bradshaw, 512 U.S. 107, 123-24 (1994) .................................................12

Nakahata v. New York-Presbyterian Healthcare System, Inc., 11 Civ. 6658, 11 Civ. 6657, 11 Civ. 6366, 2012 U.S. Dist. LEXIS 127824 (S.D.N.Y. Sept. 6, 2012), at *10 ......................................................................................................7, 8, 11, 18, 19

New Windsor Volunteer Ambulance Corps. Inc. v. Meyers, 442 F.3d 101, 118 (2d Cir. 2006)..17

Roach v. T.L. Cannon Corp., 3:10-CV-0591, 2012 U.S. Dist. LEXIS 120507 (N.D.N.Y. Aug. 24, 2012) ...........................................................................................14

Sampson v. MediSys Health Network, Inc., No. 10 Civ. 1342, 2012 U.S. Dist. LEXIS 103012, at **15-16 (E.D.N.Y. Feb. 9, 2012) ...................................................18

Seenaraine v. Securitas Security Servs., USA, Inc., 37 A.D.3d 700, 701-702, 830 N.Y.S.2d 728, 729 (2d Dep't 2007) ...................................................................15

Severin v. Project OHR, Inc., 10 Civ. 9696, 2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012), at *17 ................................................................................8, 9

Shahriar v. Smith & Wollensky Restaurant Group, 659 F. 3d 234, 241-42 (2d Cir. 2011) ..........14

Smart v. Goord, 441 F.Supp. 2d 631, 637 (S.D.N.Y. 2006) ..........................................................8

Smellie v. Mount Sinai Hospital, No. 03 Civ. 0805, 2004 U.S. Dist. LEXIS 24006 (S.D.N.Y. Nov. 29, 2004) .............................................................................................10

Strom v. Goldman, Sachs & Co., 202 F.3d 138, 144 n.6 (2d Cir. 1999) ......................................17

Tracy v. NVFR, Inc., No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778, at *5 (W.D.N.Y. Sept. 30, 2009) .........................................................................................19

Velu v. Velocity Express, Inc., 666 F. Supp. 2d 300, 309 (E.D.N.Y. 2009) ..................................17

Vera v. Saks & Company, 335 F.3d 109, 114 (2d Cir. 2003) .......................................................12

Wilk v. VIP Health Care Servs., 10 Civ. 5530, 2012 U.S. Dist. LEXIS 21630, at *16 (E.D.N.Y. Feb. 21, 2012) ....................................................................................17

Wolman v. Catholic Health Sys. of Long Island Inc., 853 F. Supp. 2d 290, 305 (E.D.N.Y. 2012) ..................................................................................................11

Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259-60 (S.D.N.Y. 2008)............................15

## Statutes                                                                Page

New York Codes, Rules and Regulations, Title 12, § 137-1.7.....................................14

New York Codes, Rules and Regulations §137-1.8 ....................................................14

12 New York Codes, Rules and Regulations § 142 ....................................................4

12 New York Codes, Rules and Regulations § 142-2.1 ..........................................9, 10

12 New York Codes, Rules and Regulations § 142-2.1(b) ..........................................9

12 New York Codes, Rules and Regulations § 142-2.2 ..........................................4, 10

12 New York Codes, Rules and Regulations § 142-2.4 .........................................14, 15

12 New York Codes, Rules and Regulations § 142-2.6 ...............................................4

Federal Rules of Civil Procedure § 12(b)(6) ........................................................1, 7

New York Labor Law § 190.......................................................................................4

New York Labor Law § 193.....................................................................................12

New York Labor Law § 195.............................................................................4, 11, 15

New York Labor Law § 195(1) ................................................................................16

New York Labor Law § 652(3)(b) .............................................................................9

New York Labor Law § 652.3 ...................................................................................1

New York Labor Law, Article 19, § 650.....................................................................4

Defendants Home Health Management Services, Inc., sued in the above-referenced matter as Home Health Care Services, Inc. ("HHMS") and Ruth Forestine ("Forestine") (sometimes collectively referred to as the "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss the Complaint (the "Motion"), on the ground that the Verified Complaint (the "Complaint") of Plaintiffs Altagracia Popa, Aurelia Sanchez and Teresa Ovalles ("Plaintiffs") fails to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint alleges a variety of wage and hour violations, all of which presuppose that Defendants are subject to the minimum wage overtime provisions of the New York Labor Law ("NYLL").  Plaintiffs' assumption in this regard is incorrect, as HHMS filed a certification (the "Certification") pursuant to NYLL § 652.3 that it is a non-profitmaking institution that has elected to pay the hourly wage, exclusive of allowances, and therefore is not subject to the overtime provisions of the NYLL.  The Certification is fatal to Plaintiffs' purported NYLL claims.

The Complaint purports to allege a variety of other causes of action that also fail to state a claim.  Plaintiffs allege that they, and the entire class they purport to represent, were parties to a contract with Defendants.  While the Complaint fails to identify the contract, it can only refer to the collective bargaining agreement and amendments thereto between HHMS and its employees (the "CBA").  Plaintiffs' claims under the CBA are pre-empted by Section 301 of the Labor-Management Relations Act (the "LMRA") which, among other things, requires that Plaintiffs grieve their complaints under the CBA.  Courts have routinely dismissed breach of contract claims which require the courts to interpret the specific requirement of labor contracts. Plaintiffs' claims for unjust enrichment and quantum meruit are similarly pre-empted, and also

1

fail because, under New York law, such claims sound in equity and, therefore must be dismissed when there is an adequate remedy at law, such as a contract between the parties that sets forth the parties' respective rights and obligations.  Here, the CBA is such a contract.

## STATEMENT OF FACTS

The Complaint allegations are summarized below.[1]

### A.    The Parties.

HHMS provides home health care services for the elderly and infirm in the City of New York.  HHMS "is a Domestic Not-For-Profit Corporation duly organized and existing pursuant to the laws of the State of New York."  (Complaint, ¶ 3.)  HHMS has duly filed its Statement of Non-Profitmaking Institution whereby HHMS has elected to pay the statutory wage exclusive of allowances in lieu of wage order coverage.  (November 15, 2012 Declaration of Ruth Forestine ("Forestine Dec."), Ex. B.)  HHMS provides services "pursuant to contract with one or more governmental agencies."  (Complaint, ¶ 4.)

Forestine is the President and the Director of HHMS.  (Complaint, ¶ 1; Forestine Dec., ¶ 1.)  HHMS's acts relevant to the Complaint "were authorized, directed or accomplished" by Forestine, "individually or jointly, by herself and/or by her agents, officers, employees or representatives, and or [sic] Board of Directors."  (Complaint, ¶ 9.)

Plaintiffs are home care workers employed by HHMS.  They "provide personal care and assistance to disabled and elderly clients as assigned to them" by HHMS, and have done so for more than 6 years.  (Complaint, ¶¶ 2, 19.)  Plaintiffs purport to represent a class "of all current and former hourly paid home health care workers employed by Defendants in New York for work performed during the 6 year period commencing September, 2006 to present."  (Complaint,

---

[1]  The Court may take judicial notice of or otherwise consider additional facts set forth below.  See Point I, infra.

¶ 10.)  Plaintiffs' factual allegations, below, are alleged to be true with regard to all members of the putative class. (Complaint, ¶¶ 1, 12, 13 and 22.)

**B.**     <u>**Plaintiffs' Factual Allegations**</u>**.**

In the Complaint, Plaintiffs allege that from September 1, 2006 to present, Plaintiffs were paid $10.00 per hour for weekdays and $11.10 per hour on weekends, and "on a regular basis" were assigned and worked more that 44 hours during the course of a work week, at times as much as 80 hours in a work week.  (Complaint, ¶ 21.)  Moreover, Plaintiffs claim that they had to purchase "latex gloves and cleansing material… for the benefits of Defendants."  (Complaint, ¶ 22; *see also* ¶ 31 (adding hand sanitizer, purchase and laundering of uniforms, toilet paper and soap to list of items Plaintiffs had to purchase).)   The Complaint makes no allegation that the amount of these deductions reduced Plaintiffs' compensation below the statutory minimum wage. The Complaint alleges that Defendants failed to maintain proper payroll records.  (Complaint, ¶¶ 23, 25.)

The Complaint alleges that Plaintiffs were required to work a "spread of hours," that is, "a shift longer than ten hours per day but were not paid for an additional hour of work at the minimum wage." (Complaint, ¶ 24.)   The Complaint does not allege that, even without pay for an additional hour of work at the minimum wage, Plaintiffs' compensation fell below the statutory minimum wage.  The Complaint does not allege any facts regarding when or how often Plaintiffs worked a spread of hours or a shift longer than ten hours.

**C.**     <u>**Plaintiffs' Legal Allegations**</u>**.**

Based on these sparse factual allegations, the Complaint purports to assert no fewer than eight causes of action.

First, the Plaintiffs allege that they were not paid "overtime wages of not less than one and one-half (1 and ½) times the New York State minimum wage rate for each hour worked in excess of forty four (44) hours in a work week in violation of the NYLL, Article 19, § 650, *et seq.* and 12 NYCRR § 142-2.2" and also required Plaintiffs to "purchase their own supplies." (Complaint, ¶¶ 30-31.)

Second, Plaintiffs allege that they did not receive an additional hour's pay for every day that they "worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours, in violation of N.Y. Labor Law §§ 190, *et seq. and* 650 *et seq.*, and 12 NYCRR § 142." (Complaint, ¶ 35.)

Third, Plaintiffs allege that they have not been paid all wages due to them when such wages were due, in violation of NYLL § 195. (Complaint, ¶ 38, and Heading to Third Cause of Action.)

Fourth, the Complaint alleges that, effective October 26, 2009, "employers were required to notify their employees at their time of hiring of the rate of pay and regular pay day… and, for employees who are eligible for overtime, the overtime rate of pay." (Complaint, ¶ 41.)  As noted above, however, the Complaint alleges that all of the named Plaintiffs have been HHMS employees for at least six years.  (Complaint, ¶ 10.)  The Complaint further alleges that Defendants failed to maintain other time records required by 12 NYCRR § 142-2.6. (Complaint, ¶ 42.)

Fifth, the Complaint alleges that Defendants were unjustly enriched by their failure to pay the Plaintiffs and the class all wages, including the spread of hours payments, Plaintiffs claim they were entitled to. (Complaint, ¶ 45.)  This Cause of Action is redundant of Plaintiffs' Second Cause of Action and should be dismissed on that basis.  To the extent this Cause of Action

4

purports to assert a source of an entitlement to such wages beyond the NYLL, the only reasonable inference to be drawn from the Complaint's factual allegations is that this source is the CBA.

Sixth, the Complaint alleges that "there was an agreement between plaintiffs and defendants" that covered Plaintiffs' employment, and that, pursuant to this contract, Defendants were obligated to pay Plaintiffs certain "fringe benefits." (Complaint, ¶ 50.) By failing to pay these fringe benefits, the Complaint alleges that Defendants "breached their agreement of employment" with Plaintiffs. (Complaint, ¶ 53.) While the Complaint does not expressly say so, this "agreement of employment" with the entire class can only be the CBA.

Seventh, the Complaint "demand[s] compensation for services [Plaintiffs] performed for the Defendants as their employees which Defendants have refused to pay, in an amount to be determined in quantum meruit." (Complaint, ¶ 55.)

Eighth, the Complaint demands "injunctive relief on each of its causes of action[]." (Complaint, ¶ 57.)

**D.** **Procedural History.**

The Complaint is dated September 5, 2012, and was filed in The Supreme Court of the State of New York, County of New York on September 6, 2012. On October 15, 2012 the parties executed a stipulation extending Defendants' time to respond to the Complaint to November 16, 2012. (Forestine Dec., Ex. D.) On October 24, 2012, Defendants filed a Notice of Removal to have the matter removed to Federal Court.

## ARGUMENT

The Complaint fails to state a claim for several reasons.  First, as a non-profitmaking institution that filed a certification with the New York State Department of Labor ("DOL") within six months after it was organized, HHMS is not subject to the overtime requirements of the NYLL and wage orders.  (Forestine Dec., Ex. B.)  The Certification mandates dismissal of Plaintiffs' first four causes of action.  In the alternative, Plaintiffs' Third Cause of Action should be dismissed because it is duplicative of the first two causes of action.  Moreover, Plaintiffs' Fourth Cause of Action should be dismissed for lack of standing, because Defendants are not subject to Part 142, and because the CBA sets forth Plaintiffs' rate of pay and pre-empts this cause of action.

Second, the Complaint references a class-wide contract, which is clearly a reference to the CBA.[2]  Indeed, Plaintiffs explicitly allege a cause of action for violation of that contract.  This cause of action cannot be evaluated without a detailed analysis of the CBA because a breach of contract claim cannot be evaluated without reviewing the contract.  Because of this, as discussed in more detail below, Plaintiffs' Sixth Cause of Action is pre-empted by Section 301.  Plaintiffs' equitable causes of action for unjust enrichment and quantum meruit, to the extent they are not redundant of Plaintiffs' causes of action under the NYLL, also cannot be evaluated without a detailed analysis of the CBA, and therefore are similarly pre-empted.  In the alternative, under well-settled principles of New York law, equitable causes of action must be dismissed when there is an adequate remedy of law, such as a breach of contract claim for the same subject matter.  Here, the Complaint asserts a breach of contract claim.  For all of these reasons, Plaintiffs' Fifth, Sixth and Seventh Causes of Action must be dismissed.

---

[2]    Plaintiffs did not attach a copy of the CBA to the Complaint.  Nonetheless, its reference to "an agreement between plaintiffs and defendants" (Complaint, ¶ 50), including class members, cannot plausibly be a reference to any other agreement.

## POINT I

## STANDARDS OF REVIEW ON MOTION TO DISMISS

Judge Crotty has recently summarized the pleading standard applicable to motion to dismiss:

> In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A court need not accept as true, however, "legal conclusions, deductions or opinions couched as factual allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining the sufficiency of a complaint, the Court may consider :the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993).

Nakahata v. New York-Presbyterian Healthcare System, Inc., 11 Civ. 6658, 11 Civ. 6657, 11 Civ. 6366, 2012 U.S. Dist. LEXIS 127824 (S.D.N.Y. Sept. 6, 2012), at *10. In Nakahata, the court explicitly considered the entire collective bargaining agreement provided by the defendants, as one of the complaints filed by the defendants included only a portion of it. Here, the Complaint references the "Agreement" between the parties, which, given the Plaintiffs' class-wide allegations, can only be a reference to the CBA. (Forestine Dec., Ex. C.) See Karmilowicz v. The Hartford Financial Servs. Group, Inc., No. 11-3284, 2012 U.S. App. LEXIS 18394, at *5 (2d Cir. August 30, 2012) ("We have cautioned that a plaintiff cannot 'evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference."). Similarly, the Court may take judicial notice of the fact that the DOL has accepted the Certification of HHMS.

Smart v. Goord, 441 F.Supp. 2d 631, 637 (S.D.N.Y. 2006) ("When ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, [and] matters of general public record....") (quoted in Fiore v. Medina, No. 11 Civ. 2264, 2012 U.S. Dist. LEXIS 143333, at *3, n.2 (S.D.N.Y. Sept. 27, 2012).)

Most importantly, Plaintiffs' bare-bones Complaint is devoid of sufficient facts to state "plausible" causes of action.  Compare Nakahata, 2012 U.S. Dist. LEXIS 127824, at *13 ("[A]n adequate complaint must allege 'when the alleged unpaid wages were earned (*i.e.* which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation,' and plaintiffs' 'dates of employment, pay, [and] positions.'") (internal citation omitted.)  For the reasons set forth below, the Complaint should be dismissed for failure to state a claim.

## POINT II

## DEFENDANTS ARE EXEMPT FROM THE MINIMUM WAGE OVERTIME REQUIREMENTS OF THE NEW YORK LABOR LAW

Plaintiffs' first four causes of action should be dismissed because Defendants are exempt from the minimum wage overtime requirements of New York law.  Plaintiffs' Complaint does not seek overtime pay calculated with respect to Plaintiffs' regular rate of pay, but rather seeks "not less tha[n] one and one half (1-1/2) times the basic minimum hourly rate for all hours worked in excess of forty four (44) hours in one work week."  (Complaint, ¶ 7.)  By this allegation, Plaintiffs appear to recognize that "[t]here are no provisions governing overtime compensation" in the NYLL tied to Plaintiffs' regular rate of pay.  Severin v. Project OHR, Inc., 10 Civ. 9696, 2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012), at *17 (citing Ballard v. Community Home Care Referral Serv., 264 A.D.2d 747, 747 (2d Dep't 1999).)   Rather,

Plaintiffs' overtime rights in this case are governed by, and limited to, state regulations tied to the statutory minimum wage rate.  See 12 N.Y.C.R.R. §§ 142-2.1 *et seq.* (hereafter "Part 142").

Part 142, however, does not apply to Defendants.  12 N.Y.C.R.R. § 142-2.1(b) expressly states that Part 142 does not apply to "employees of a non-profitmaking institution which has elected to be exempt from coverage under a minimum wage order, pursuant to subdivision 3 of section 652 of the minimum wage act."  See Severin, 2012 U.S. Dist. LEXIS 85705, at *18, n. 2. That statute provides:

> Option available to non-profitmaking institutions. The  provisions of any wage order issued under this article shall not apply, however, to any non-profitmaking institution which pays and continues to pay to each of its employees in every occupation a wage, exclusive of allowances, of not  less  than  the  minimum wage  provided in subdivision one of this section provided that such institution had certified under oath  to  the commissioner, on or before September first, nineteen hundred sixty, that on or before October first, nineteen hundred sixty it would pay and thereafter intended to pay such wage to each of its employees in every occupation  and provided further that all the provisions of this article have not become applicable to such institution by operation of paragraph (c) of this subdivision. If such institution was not organized or did not hire any employees as defined in subdivision five of section six hundred fifty-one of this chapter before September first, nineteen hundred sixty, such provisions shall not apply so long as, commencing six months after it was organized, or first employed such employees it paid and continues to pay such wage to each of its employees in every occupation, provided that such institution certified under oath within six months after it was organized or first employed such employees that it would pay and thereafter intended to pay such wage to each of its employees in every occupation and provided further that all the provisions of this article have not become applicable to such institution by operation of paragraph (c) of this subdivision.

New York Labor Law § 652(3)(b).  Here, HHMS filed the requisite Certification.  (Forestine Aff., Ex. B.)

Defendants acknowledge that a non-profitmaking institution that has filed the certification must still pay the applicable New York minimum wage.  Id.  See also Smellie v. Mount Sinai Hospital, No. 03 Civ. 0805, 2004 U.S. Dist. LEXIS 24006 (S.D.N.Y. Nov. 29,

2004).  In <u>Smellie</u>, the complaint alleged that the Plaintiffs were misclassified as independent contractors, not employees.  Accordingly, the court in <u>Smellie</u> explained, the complaint alleged that the plaintiffs "were in fact employees but were not treated as such, and that they were not paid in accordance with the minimum wage requirements of the statute."  <u>Smellie</u>, 2004 U.S. Dist. LEXIS 24006 at *6.

Here, in contrast, the Complaint makes no such allegation.  First, the Complaint does not dispute that Defendants classified the Plaintiffs as employees.   <u>See</u>, e.g., Complaint, ¶ 19 (acknowledging that Plaintiffs were "employed by" Defendants.)   Second, the Complaint specifically alleges that Defendants paid Plaintiffs at least $10.00 per hour, substantially in excess of the applicable statutory minimum wage.[3]  Third, any allegation that Defendants did not pay Plaintiffs the statutory minimum wage would be implausible given that the CBA set Plaintiffs' wages at substantially above the applicable minimum wage, and Plaintiffs do not allege that they were not paid the amount required by the CBA.  (Forestine Aff., Ex. C.) <u>Compare</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (complaint allegations must be "plausible" to survive a motion to dismiss.)

Under these circumstances, Plaintiffs' allegations that the Defendants failed to pay them one and one-half times the applicable minimum wage for overtime hours must be dismissed for failure to state a claim.   As the Complaint recognizes, the legal obligation to make such payment is NYLL Article 19 and 12 N.Y.C.R.R. § 142-2.2.  (Complaint, ¶ 30.)  The Defendants are not subject to these legal requirements because they are a non-profitmaking institution that properly filed the Certification.  Moreover, the Complaint fails to allege which shifts the Plaintiffs worked for which they were not paid or how often this occurred.  Plaintiffs' Complaint allegations

---

[3]  The New York minimum wage rate has been $7.25 per hour since July 24, 2009; it has been $7.15 per hour since January 1, 2007; and it has been $6.75 per hour since January 1, 2006.  12 N.Y.C.R.R. § 142-2.1.

regarding failure to pay the applicable minimum wage thus lack the specificity necessary to survive a motion to dismiss.  Compare Wolman v. Catholic Health Sys. of Long Island Inc., 853 F. Supp. 2d 290, 305 (E.D.N.Y. 2012) (dismissing overtime claim because plaintiff failed to allege how often she worked an additional or extended shift or whether it ever resulted in unpaid overtime, explaining that "[s]uch inartful, conclusory pleading will not defeat a motion to dismiss"); Nakahata, 2012 U.S. Dist. LEXIS 127824 at *16.  See also Angiulo v. County of Westchester, 11-CV-7823, 2012 U.S. Dist. LEXIS 153656 (S.D.N.Y. Oct. 25, 2012), at **6-13 (dismissing FLSA claim because of vague pleading allegations).  Therefore, Plaintiffs first four causes of action should be dismissed because Defendants are exempt from the minimum wage requirements of New York law.

## POINT III

### PLAINTIFFS' REMAINING ALLEGATIONS OF WAGE VIOLATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' first four causes of action make several allegations of wage violations under the NYLL that, in addition to the reasons set forth in Point II, above, must also be dismissed for failure to state a claim upon which relief may be granted for additional reasons unrelated to the Certification.  These allegations are for: (1) requiring Plaintiffs to purchase their own supplies; (2) requiring Plaintiffs to work a spread of hours or shift in excess of 10 hours; (3) failing to pay Plaintiffs all wages due to them when such wages were due, in violation of NYLL § 195; and (4) failing to notify Plaintiffs "in writing at the time of hiring of the rate of pay and regular pay day… and, for employees who are eligible for overtime, the overtime rate of pay."  (Complaint, ¶ 41).  These allegations fail to state a claim for the reasons set forth in Point II, above and also fail to state a claim for the additional reasons set forth below.

**A.**     <u>**Plaintiffs' Remaining Allegations of Wage Violations Are Pre-empted**</u>.

Plaintiffs' remaining allegations contained in Causes of Action One through Four, enumerated in the preceding paragraph, are pre-empted by Section 301 because resolving them requires interpretation of the CBA.  <u>See</u> <u>Vera v. Saks & Company</u>, 335 F.3d 109, 114 (2d Cir. 2003) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.")

To determine whether a state-law claim is preempted by § 301, the Court must engage in a two-part analysis. First, the Court must determine whether the claim "is truly independent of rights under the collective bargaining agreement." <u>Levy v. Verizon Information Services</u>, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) (<u>citing</u>, <u>inter alia</u>, <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 123-24 (1994).)  Second, "even if the right exists independently of the CBA, the court must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" <u>Id.</u> (internal citations omitted.)  "If such dependence exists, the claim is preempted by § 301.") <u>Id.</u> (internal citations omitted.)

In <u>Vera</u>, <u>supra</u>, the Second Circuit held that a shoe salesman's claims of unlawful deductions from his wages pursuant to NYLL § 193 was pre-empted because, to evaluate the claim, the court would have had to determine whether the applicable collective bargaining agreement altered the parties' arrangement regarding the payment of commissions, and to decide whether incentive compensation was actually earned before it determined if wages were subsequently deducted in violation of Section 193. <u>Vera</u>, 335 F.3d at 115.  Similarly, in <u>Levy</u>, also a case involving alleged underpayment of incentive compensation, "the court would have to

ascertain whether the deductions were permitted under the CBAs; such a determination would plainly require the court's interpretation of the CBAs." Levy, 498 F. Supp. 2d at 597-98.

Here, Plaintiffs' allegations that Defendants require Plaintiffs to purchase their own supplies are pre-empted by Section 301 because Plaintiffs' purported obligations to purchase supplies, if any, are a subject of collective bargaining, and Plaintiffs' claim cannot be evaluated without an analysis of the CBA.  To the extent Plaintiffs believe their rights under the CBA have been violated, they have the right to bring a grievance.

Similarly, Plaintiffs' allegations that they had to work a spread of hours or a shift in excess of 10 hours and did not receive wages when due to them cannot be evaluated without an analysis of the CBA to determine (i) whether and when Plaintiffs had to work a spread of hours, and (ii) how they were compensated when this occurred.  For example, the Complaint alleges that Plaintiffs were paid $11.00 per hour on weekends, which is more than 1.5 times the New York minimum wage rate.  Thus, this allegation is also pre-empted by Section 301.

Determining whether Plaintiffs were paid all wages due to them when such wages were due also requires analysis of the CBA to determine the wages due to Plaintiffs, as set forth above, and when such wages are payable.  Finally, Plaintiffs' claim that that they were not notified of their rate of pay is both pre-empted and facially implausible where, as here, the CBA sets forth the Plaintiffs' rate of pay.

**B.**     **Plaintiffs' Remaining Allegations of Wage Violations Fail to State a Claim.**

Even if the claims discussed in Section III.A. were not pre-empted, Plaintiffs' allegation that Defendants forced them to purchase their own supplies would fail to state a claim because such deductions are permissible so long as the employees' wages do not fall below the minimum wage.  Roach v. T.L. Cannon Corp., 3:10-CV-0591, 2012 U.S. Dist. LEXIS 120507 (N.D.N.Y.

13

Aug. 24, 2012) (finding issue of fact as to whether costs of purchasing and laundering uniforms reduced Plaintiffs' wages below the minimum wage); Flores v. Anjost Corp., No. 11 Civ. 1531, 2012 U.S. LEXIS 85171 (S.D.N.Y. June 19, 2012) (wage deduction for uniform costs permissible unless it reduces wage below the statutory minimum wage); Chan v. Triple 8 Palace, Inc., No. 03-cv-6048, 2006 U.S. Dist. LEXIS 15780, at *78, n. 39 (S.D.N.Y. Mar. 30, 2006) (N.Y.C.R.R. § 137-1.8 only applies if cost of uniform maintenance reduces Plaintiffs compensation below the minimum wage).   Here, there is no allegation that the expenses Plaintiffs allege they absorbed reduced their wages below the statutory minimum wage, and their rate of pay pursuant to the CBA would make any such claim implausible on its face.

Similarly, Plaintiffs' allegation that they were not paid an extra hour at the minimum rate of pay fails to state a claim because Plaintiffs do not allege that, without that extra hour's pay, their overall compensation fell below the minimum wage requirement.   See 12 N.Y.C.R.R. § 142-2.4 (requiring "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part" in the event of a spread of hours in excess of 10 hours or a spilt shift.)   The vast majority of cases addressing the regulation have held that it only applies if the employees' wages fell below the minimum wage rate without the extra hour's pay.   Shahriar v. Smith & Wollensky Restaurant Group, 659 F. 3d 234, 241-42 (2d Cir. 2011) (Section 142-2.4 and its predecessor regulation, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 require and "required employers to pay servers an extra hour's pay at the regular minimum wage for each day they work more than ten hours."); Roach, 2012 U.S. Dist. LEXIS 120507, at **4-7 (holding that because § 142-2.4 explicitly provides for an additional wage only "in addition to the minimum wage" required under New York law, "[i]t is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above

the minimum rate" and granting deference to a DOL opinion letter reaching that conclusion) (citing, inter alia, Chan, 2006 U.S. Dist. LEXIS 15780, at *7-8; Seenaraine v. Securitas Security Servs., USA, Inc., 37 A.D.3d 700, 701-702, 830 N.Y.S.2d 728, 729 (2d Dep't 2007) ("[T]he Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language.   Thus, it is entitled to deference."); Almeida v. Aguinaga, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007) ("The exception perceived by the Yang Court is illusory; no group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the 'minimum' required by law"; Espinosa v. Delgado Travel Agency, Inc., No. 05-cv-6917, 2007 U.S. Dist. LEXIS 15149, at *1-2 (S.D.N.Y. Mar 2, 2007) (adopting similar reasoning.)   But see Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005) (declining to defer to the DOL opinion letter and holding that §142-2.4 applied to all hourly workers, including those who made more than the minimum wage).

Plaintiffs' claims of improper recordkeeping pursuant to NYLL Section 195 also fail to state a claim for several reasons.  First, Defendants are unaware of any authority that Section 195 authorizes a private right of action for improper recordkeeping.   Compare Cunningham v. Electronic Data Systems Corp., 579 F. Supp. 2d 538, 543 (S.D.N.Y. 2008) ("Defendant is correct that there is no private right of action to enforce these [the FLSA's record-keeping] provisions.") Second, none of the named Plaintiffs have been affected by this alleged violation.  Compare Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259-60 (S.D.N.Y. 2008) (consequence of failure to comply with FLSA posting requirements may be equitable tolling of statute of limitations).   Here, the Complaint alleges that the alleged recordkeeping violations were for

those employees hired in or after 2009; the Complaint, however, also alleges that the named Plaintiffs have all been employed by HHMS since 2006 or before. (Complaint, ¶¶ 19, 21 and 41.) Third, as set forth above, to the extent Plaintiffs' claims are based on Part 142 (See Complaint, ¶ 23), they fail because Defendants are not subject to Part 142. Fourth, to the extent Plaintiffs' claims are based on Section 195(1), which requires employers to "notify . . . employees, in writing, at the time of learning of the rate of pay and the regular pay day," such a claim is pre-empted by Section 301 because interpretation of the CBA is necessary to determine whether it provides this information. In the alternative, the CBA clearly provides this information, and this cause of action fails to state a claim. (See Forestine Dec., Ex. C. at: 5-8; December 12, 2002 Memorandum of Agreement ("MOA") at 2; August 4, 2003 MOA at 1; January 31, 2005 Letter at 1; March 15, 2006 Letter at 1-2; September 29, 2008 MOA at 1-2.)

## POINT IV

### PLAINTIFFS' BREACH OF CONTRACT, UNJUST ENRICHMENT AND QUANTUM MERUIT CLAIMS ARE PRE-EXEMPTED, AND FAIL TO STATE A CLAIM

Plaintiffs' breach of contract, unjust enrichment and quantum meruit claims are pre-empted by Section 301. Any determination of whether Defendants breached their contractual obligations to Plaintiffs requires an analysis of the CBA, and "substantially depend[s]" on how the applicable provisions of the CBA are interpreted. Levy, 498 F. Supp. 2d at 596. For example, resolution of Plaintiffs' claims that they were entitled to "fringe benefits" under the CBA that they did not receive substantially depend on the provisions of the CBA that define their rights to such fringe benefits and how those provisions are interpreted. (See Forestine Dec., Ex. C at 14-16; August 28, 2012 MOA at 1-3.)

Plaintiffs' unjust enrichment and quantum meruit claims are similarly pre-empted. Plaintiffs' unjust enrichment claim of "underpaid overtime hours" (Complaint, ¶ 47) substantially depends on whether Plaintiffs' hours were, in fact, "underpaid" under the CBA.[4]

Similarly, Plaintiffs quantum meruit claim is similarly pre-empted by Section 301 because determining whether Plaintiffs received fair "compensation for services they performed" (Complaint, ¶ 55) substantially depends on interpretation of the CBA.

Moreover, Plaintiffs' unjust enrichment and quantum meruit claims fail to state a claim. Those claims sound in equity, and courts will not permit such equitable claims if there is an adequate remedy at law. Wilk v. VIP Health Care Servs., 10 Civ. 5530, 2012 U.S. Dist. LEXIS 21630, at *16 (E.D.N.Y. Feb. 21, 2012) (quoting inter alia, Strom v. Goldman, Sachs & Co., 202 F.3d 138, 144 n.6 (2d Cir. 1999) ("[E]quity typically denied relief in a proceeding seeking restitution . . . on the theory of unjust enrichment because the remedy at law, an action for damages, typically was adequate.") See also Velu v. Velocity Express, Inc., 666 F. Supp. 2d 300, 309 (E.D.N.Y. 2009) ("[W]here a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available.") (quoting, New Windsor Volunteer Ambulance Corps. Inc. v. Meyers, 442 F.3d 101, 118 (2d Cir. 2006).)

---

[4] To the extent Plaintiffs' Fifth and Sixth Causes of Action are construed as claims that they were "underpaid" in relation to the requirements of the NYLL, these claims would be redundant of Plaintiffs' First Cause of Action and should be dismissed on that basis.

**POINT V**

**THE COMPLAINT FAILS TO STATE A CLAIM FOR**
**INDIVIDUAL LIABILITY AGAINST DEFENDANT FORESTINE**

Even if Plaintiffs had a claim against HHMS, their claims against Forestine must be dismissed because the Complaint does not adequately allege that she is an employer under the economic reality test.  Nakahata, 2012 U.S. Dist. LEXIS 127824, at *30.  Plaintiffs have not alleged facts from which it can reasonably be inferred that Forestine (1) as opposed to HHMS, had the power to hire and fire them, (2) supervised and controlled their work schedules or conditions of employment, (3) determined the rate and method of employment, and (4) maintained employment records.  Id. (citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984).)  In Nakahata, the complaint contained conclusory allegations that one individual defendant was the corporate defendant's President and CEO who, along with another individual, had "operational control" over the entity, "authority to make 'employment decisions' concerning hirings and firings, and were 'involved in the creation and/or maintenance of the illegal policies'."  2012 U.S. Dist. LEXIS 127824 at *36.  The court held that these allegations failed to state a claim, explaining that they were "nothing more than conclusory allegations designed to satisfy the economic reality test" Id. at **36-37 (quoting Sampson v. MediSys Health Network, Inc., No. 10 Civ. 1342, 2012 U.S. Dist. LEXIS 103012, at **15-16 (E.D.N.Y. Feb. 9, 2012) (recommending dismissal of nearly identical allegations as insufficient to show individual defendants were plaintiffs' employer.)  The Nakahata court explained that "[w]hile plaintiffs repeatedly allege that these individual defendants had the 'authority' to make employment decisions, 'upon careful analysis, the complaint asserts little more than because [the individual defendants held positions as directors and officers], then each must have had authority to take the actions that comprise the 'economic realities' test, and that because each had the

authority to take those actions, then each must have in fact taken those actions . . . [t]o accept the adequacy of these allegations would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds."[5] Id. at *37 (quoting Tracy v. NVFR, Inc., No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778, at *5 (W.D.N.Y. Sept. 30, 2009), adopted in relevant part, 667 F. Supp. 2d 244 (W.D.N.Y. 2009). The Nakahata court held that "[p]laintiffs have not alleged facts to plausibly show that the individual defendants knew of, let alone created or maintained, the purported unlawful policies." Id. at *38.

Here, the Complaint alleges even fewer facts against Forestine than the complaint alleged against the individual defendant in Nakahata. As to Forestine, the Complaint alleges that she "has been the President and/or Chief Executive Officer of [HHMS] . . . and possessed and exercised operational control and policy making authority over employment policies, compensation policies, budgets, wages, hours, schedules and client services." (Complaint ¶ 5). The Complaint further alleges that the acts of HHMS "were authorized, directed or accomplished by defendant, Ruth Forestine, individually or jointly, by herself and/or by her agents, officers, employees or representatives, and/or [sic] Board of Directors while actively engaged in the management of defendants' home care business." (Id., ¶ 9.) These allegations are simply insufficient to allege that Forestine was the Plaintiffs' employer under the economic control test. See Nakahata, 2012 U.S. Dist. LEXIS 127824, at *36-39 and the cases cited therein. Indeed, insofar as the wage practices Plaintiffs complain of were collectively bargained, as can be reasonably inferred from the Complaint allegations here, Plaintiffs' allegations against Forestine fail to state a claim as a matter of law.

---

[5] The economic reality test applies to both the FLSA and the NYLL. Id. at *30, n.9.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant the Motion, award the Defendants their reasonable attorney's fees and costs, and order such other and further relief as the Court deems just and appropriate.

Dated: Garden City, New York
         November 16, 2012

                                        MORITT HOCK & HAMROFF LLP
                                        Attorneys for Defendants
                                        Home Health Management Services, Inc.
                                        and Ruth Forestine


                                        By: _A. Jonathan Trafimow_
                                             A. Jonathan Trafimow
                                        400 Garden City Plaza
                                        Garden City, New York  11530
                                        Tel.:  (516) 873-2000
                                        Fax:  (516) 873-2010
                                        Email:  jtrafimow@moritthock.com

367699v2